# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x

UNITED STATES OF AMERICA

v.                                                          08CR76(JBW)

GINO CRACOLICI, et. al.

     Defendants.

---------------------------------------------------x

## MEMORANDUM OF LAW

     This Memorandum of Law is respectfully submitted in support of the defendant Gino Cracolici's motion  (1) for an order suppressing the fruits of a warrantless and illegal search of defendant's home; (2) alternatively, for an evidentiary hearing to determine the legality of the search; (3) for an order suppressing tape recordings of defendant's alleged telephonic communications made pursuant to orders authorizing electronic surveillance issued by New York State Courts; (4) for an order suppressing a tape recording of an alleged conversation of March 17, 2006, based upon the fact that no party to the conversation consented to the tape recording of the entire conversation; and (5) for an order directing the Government to provide discovery, a bill of Particulars and *Brady* material.

1

## 1. The Search of Defendant's Home Was Illegal

On February 7, 2008 numerous Government agents arrested the defendant, Gino Cracolici, at his home at 220 Summit Drive, New Windsor, New York pursuant to an arrest warrant.   Defendant was arrested immediately upon his opening the front door of his home to allow the agents entrance at approximately 6AM. At the time of his arrest Defendant's movements were restricted.   Defendant's wife was the only other person home at the time, and her movements were also immediately restricted. Shortly after defendant's arrest, a search of defendant's 10- room house was conducted without a search warrant.  Various firearms which defendant purchased legally and for which he had a permit were seized during this search.  Affirmation of Gino Cracolici, dated June 20, 2008.

In **Katz v. United States**, 389 U.S. 347, 357 (1967) the Court imposed a presumptive warrant requirement for searches and seizures unless a preexisting exception to the warrant requirement applies.   No such exception applies here.  While the Government had a warrant to arrest the defendant, it had no warrant to conduct a thorough search of his entire home. It is one thing for the agents to conduct a search incidental to defendant's arrest to protect themselves, and to make certain that evidence is not

destroyed; it quite another for them to search through defendant's entire home seizing items at will.

The search and seizures here were patently illegal and must be suppressed.   At the very least an evidentiary hearing must be ordered to determine the legality of the search and seizures.

**2. Electronic Surveillance Warrants were not Based upon Probable Cause and their Fruits Must be Suppressed.  Further, Alternative Investigative Measures were not Undertaken.**

On April 15, 2005 a New York State Judge signed an order permitting New York State Law Enforcement Officials to intercept for a 30-day period wire communications relating to 201-538-1866, subscribed to by Nesco Inc., 211 W. 5th Street, Bayonne, New Jersey, and allegedly used by co-defendant, Nick Calvo.   On May 15, 2005, an extension order was signed, based in large part on the fruits of the first order, permitting the continuation of interceptions for an additional 30-day period.  Defendant Cracolici was allegedly intercepted during this period, and, therefore, has standing to contest the legality of these orders.

Federal standards apply in judging the legality of state ordered wiretaps offered into evidence in federal court, including the necessity the probable cause exist to believe offenses were being committed.  **United States v. Rowell,** 903 F. 2d 899, 901-02 (2d Cir. 1990).   Under federal

standards the wiretaps here are illegal.   The affidavit submitted in support of the order of April 15, 2005 was riddled with little more than gossip and innuendo relating to the "Mafia" and lacked probable cause to believe a crime was being committed.

The April 15, 2005 order was based primarily upon the affidavit of April 15, 2005 of Jonathan Mellone, a Special Agent of the United States Department of Labor, dated April 15, 2005.  The gist to the affidavit, which is attached as Exhibit 1 to the Declaration of Dominic F. Amorosa, dated June 20, 2008("Amorosa Declaration"), submitted in support of this motion, was that Nicholas Calvo, Michael King and Anthony Delvecchio were engaged in the crimes of commercial bribery, falsifying business records and grand larceny in violation of New York State laws, and a conspiracy to violate these laws.  These offenses are alleged to have taken place in connection with the trucking industry work in which Calvo was engaged. The bribe recipients were alleged to be King and Delvecchio who were employees of the Schiavone Construction Company ("Schiavone"). According to the affidavit, Calvo was the alleged briber.  Apart from general allegation what this was a "Mafia investigation", which adds nothing to the issue of whether probable cause existed that these offenses were being committed, the affidavit was based almost totally on the work of an

undercover informer ("CI"), who was making consensual tape recordings of Calvo, King Delvecchio and others in this period.

Although the affidavit asserts that the information provided by the CI, who was a dump truck operator, suggested that Calvo was engaged in bribing Delvecchio and King, this was purely a speculative conclusion. There is not an iota of proof in the affidavit that the alleged victim of the bribery, Schiavone, was unaware, and did not approve, the alleged payments received by its employees, Delvecchio and King. There could have been no bribery here, or conspiracy to commit bribery, if Schiavone approved of the financial relationship between Calvo on the one hand and Delvecchio and King on the other. From the allegations of the affidavit it was just as likely that the transactions described in the affidavit were in the nature of rebates and commissions standard in the trucking and carting industry. It would have been very simple for the authorities to have contacted the alleged victim, Shiavone, and determined its awareness and approval of these arrangements. Their failure to do so not only demonstrates carelessness; it invalidates this eavesdropping order.

For example, paragraph 21 of the Mellone affidavit states in summary that Calvo discussed the "bribery" scheme with the CI on February 15, 2005 and that on this day Calvo stated he wanted to take care of Delvecchio and

King, and that the CI would pay Calvo money and that Calvo would share it with Delvecchio and King. Further, it is alleged that Calvo told the CI that Calvo was paying King money in return for work Calvo has obtained from Schiavone's moving scrap metal from Schiavone jobs.

These allegations do not show in the slightest any illegality unless Schiavone had no knowledge of these details. No such allegation is made. For all we know from this affidavit, Schiavone was well aware King and Delvecchio were obtaining payments to steer business Calvo's way, and approved it, or that Schiavone was itself sharing in these payments. While the latter may amount to an offense, it would not be among the offenses listed in the affidavit for which the warrant was sought. Again, the Government's failure to even investigate this possibility before seeking a warrant is telling.

The fact that the payments were made in cash, as is alleged in the Affidavit, does not detract from this argument. This was not a tax investigation in which the offense supporting the wiretap application was that cash payments were undisclosed on tax returns. It was a bribery investigation in which the Government was required to show that there were improper payments made in return for business that would not otherwise be awarded. There is nothing to suggest bribery was even contemplated in

any of these transactions other than speculation that Schiavone did not approve of, and share in, these alleged payments.

Further, although the affidavits pay lip service to the federal requirement that no interception order can be issued until it is shown that it is necessary and that other law enforcement techniques have been exhausted, this was not true.   The CI was speaking daily to the targets of this alleged bribery investigation and this powerful investigative tool was ignored in seeking an interception order.   The CI not only was in a position to tape the targets of the order, but actually did so, and did so repeatedly.   This failure to exhaust traditional investigative techniques invalidates the April 15, 2005 order.  See **United States v. Gonzalez, Inc**., 412 F. 3rd 1102, 1113-15(9th Cir.2005)(necessity requirement not met because unused traditional methods not unlikely to be successful); **United States v. Castillo-Garcia**, 117 F. 3rd 1179,1194 (10th Cir. 1997)(necessity requirement not satisfied because application relied upon conclusory language; previous investigative techniques were visual surveillance of only 2 suspects in a large conspiracy, and use of background checks, pen registers, and trap and trace devices against only few conspirators).

The extension warrant was based upon in large part the interceptions made pursuant to the first warrant. As such, the extension warrant was

tainted by the illegally obtained original warrant and all interceptions of

Gino Cracolici made under the extension warrant, in addition to the first

warrant, should also be suppressed.

### 3. The Tape recording of the Entirety of a March 17, 2006 Conversation was made without the consent of at least one party to the Conversation and Must be suppressed.

Title 18, USC section 2511 proscribes electronic eavesdropping of

conversations of individuals in the absence of a Court order.  Such illegal

interceptions are not admissible.   There are exceptions to this rule.  One

exception exists when one party to the interception or conversation consents

to its recording.  18 USC, section 2511 (2)(d).  Such recordings are known

as consental recordings and are legal and admissible.    Here, the

Government utilized an informant to make consental recordings of his

conversations with others, including defendant.   However, a review of a

conversation of the informant with defendant and others on March 17, 2006

demonstrates that the informant, who was participating in a conversation

with defendant and others, left the room during the conversation and left

behind his electronic eavesdropping device or tape recorder.  After he left

the room, the tape recorder continued to record the conversation of

defendant and others without the consent of anyone present.  This converted

a legal electronic eavesdropping to an illegal eavesdropping and requires

suppression of the recording, as no party consented to the electronic

recording after the informant left the meeting.   See Amorosa Declaration ¶4.

**4. Discovery, A Bill of Particulars and Brady Material Must be Provided**

On April 22, 2008 a letter was sent to the Government on behalf of

the defendant Cracolici and two other defendants requesting discovery, a bill

of particulars and *Brady* material.  Amorosa Declaration, Exhibit 2.   While

the Government has provided hundreds of tape recordings to Cracolici, as

well as his post-arrest statements, most of the items requested in the letter,

especially with respect to *Brady* materials, have not been provided. We

therefore move for an order directing the Government to furnish the

requested materials and information.    Particularly important is that the

Government be directed to furnish defendant with any evidence that Mr.

Vollaro, a Government witness, lied to any law enforcement official about

any subject since his "cooperation" began, or whether he committed any

crimes while "cooperating" with law enforcement officials, including using

or distributing illegal drugs, failing to file tax returns, lying on his tax

returns, lying or exaggerating concerning the culpability or non-culpability

of any person, lying about his financial resources and transactions, or lying

about any other subject.  Such lies are not only crimes, but also relate

directly to Mr. Vollaro's credibility and biases.

Respectfully submitted,

/s/Dominic F. Amorosa
Counsel for Gino Cracolici
521 Fifth Avenue, Suite 3300
New York, New York 10175-3300
T: 212-406-7000
F: 212-233-7805
e-mail:lawoffices@dfamorosa.com

Dated: June 20, 2008